UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| TINA LOUISE MOCK, | ) | |
| | ) | Civ. No: 15-CV-02-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CAROLYN W. COLVIN, Acting | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Tina Louise Mock seeks judicial review of the Commissioner of Social Security's decision to deny her application for Supplemental Security Income. For the reasons explained below, the Court will DENY Mock's Motion for Summary Judgment [R. 16-2] and GRANT the Commissioner's [R. 19].

**I**

**A**

At the outset, the Court notes that Mock filed her summary judgment motion approximately nine months late. [R. 14 at 1.] The Court probably could have dismissed this case *sua sponte* for failure to prosecute. But dismissal under Rule 41(b) is a harsh sanction, and courts are "reluctant to uphold the dismissal of a case . . . merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). In deciding whether to impose this unusual sanction, courts ask "1) whether the party's failure [was] due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by [counsel's] conduct; (3) whether [counsel] was warned that failure to cooperate could lead to

dismissal; and (4) whether less drastic sanctions [could be] imposed or considered before dismissal [is] ordered." *Id.*

Here, Mock's counsel attributes his tardiness to "exhaustion" and "depression" resulting from "the addition of two . . . special needs infants in [his] home." [R. 16 at 1.] Although these facts certainly do not absolve Mock of all fault for his untimely filings and disregard for court orders, they do indicate that these violations were not necessarily a result of bad faith. The Court also notes that it did not warn Mock about the risk of dismissal until March 2016, when it ordered counsel to "show cause why this case should not be dismissed for failure to prosecute." [R. 14 at 1.] Counsel responded to that order within the time allotted and tendered the present motion for summary judgment. [R. 15.] And as for "less drastic sanctions," Mock has already been "barred from filing any future cases" in this District, although he has been permitted to "finish his pending cases." [R. 18 at 2.]

The Government also appears to have suffered little or no prejudice from this delay. They have waived any right to seek dismissal on these grounds, and have filed their own motion for summary judgment without commenting on the untimeliness of Mock's filing. [R. 19.] Given (1) counsel's stated reason for his tardiness, (2) the lack of prior warning about the risk of dismissal, (3) the absence of prejudice to the Government, and (4) the strong interest in giving Mock her day in court, the Court will recognize Mock's late filing and resolve this dispute on the merits.[1]

**B**

Tina Mock filed an application for Supplemental Security Income ("SSI") with the Social Security Administration ("SSA") in July 2011. [Tr. 261-270, 18.] The SSA denied her application

---

[1] Relying on the same facts and conclusions noted above, the Court also finds that granting permission to file this untimely motion is proper under Fed. R. Civ. P. 6(b)(2). In particular, counsel likely did not act in bad faith, the delay had only a marginal impact on these judicial proceedings, and the Government suffered little or no prejudice.

2

both initially and upon reconsideration. [*Id*.] Mock then requested an administrative hearing with Administrative Law Judge ("ALJ") Karen R. Jackson, which the parties held in July 2013. [Tr. 38-80.] On September 27, 2013, the ALJ held that that Mock was not disabled because she could perform a "reduced range of medium work" that "exist[s] in significant numbers in the national economy." [Tr. 22, 29.]

In evaluating Mock's disability claim, the ALJ conducted the standard sequential analysis required under 20 C.F.R. § 416.920[2]. This evaluation includes five steps. First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. §404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See* 20 C.F.R. § 404.1520(e); 20

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work; if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments—considering his RFC, age, education, and past work—prevent him from doing other work that exists in the national economy, then he is "disabled." § 404.1520(f).

In this case, at Step 1, the ALJ found that Mock had "not engaged in substantial gainful activity since June 30, 2011." [Tr. 20.] At Step 2, she determined that Mock suffers from the following severe impairments: "neck and left shoulder pain secondary to mild spurring/osteoarthritis, cervical spine; low back pain secondary to mild degenerative disc disease and levoscoliosis; mild degenerative disc disease, thoracic spine; history of left shoulder pain; chronic obstructive pulmonary disease with tobacco abuse; migraine headaches; major depressive disorder/bereavement; anxiety disorder, not otherwise specified/post traumatic disorder; and obsessive compulsive disorder." [*Id*.] At Step 3, she held that Mock "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." [Tr. 21.] After considering the entire record, the ALJ then determined that "the claimant has the residual functional capacity to perform a reduced range of medium work," subject to the following conditions:

"She can lift and carry 50 pounds occasionally and 25 pounds frequently. She can stand and/or walk six hours in an eight-hour workday. She can sit six hours in an eight-hour workday. She can frequently climb ramps or stairs, and she can occasionally climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, or crawl. She can perform frequent overhead reaching with the bilateral upper extremities. She should avoid vibration and fumes, odors, dusts, gases, poor ventilation. She is limited to an object-focused work environment in which contact with coworkers and supervisors is casual and occasional, in a non-public work setting. Her work should not require extended conversation, coordinated activities, dispute resolution, or similar activities. She is limited to simple routine work tasks. She can maintain attention and concentration for two-hour segments during an eight-hour workday. The claimant can adapt to gradual changes in a routine work environment. Her work cannot require fast-paced

4

production quotas or goals, production rate or pace work. Her work cannot require her to exercise supervision, negotiation or arbitration."

[Tr. 22-23.]

At Step 4, the ALJ noted that she could not consider these skills in light of Mock's prior work history because Mock "has no past relevant work." [Tr. 29.] And at Step 5, the burden shifted to the Commissioner to identify a significant number of jobs in the national economy that Mock could perform, given her RFC, age, education and experience. *Jones*, 336 F.3d at 474; 20 C.F.R. § 404.1520(g); 20 C.F.R § 404.1560(c). After considering all the evidence and consulting with a vocational expert, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [*Id*.] She thus found that Mock was not disabled. [Tr. 31.] The Appeals Council declined to review the ALJ's decision [Tr. 1-6], and this appeal followed.

## II

### A

This Court must limit its review to the question of whether substantial evidence in the record supports the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). To find "substantial evidence," courts must perceive "more than a scintilla of evidence but less than a preponderance," which is to say that a court need only find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (internal quotations and citation omitted).

When searching the record for this evidence, courts must examine the record as a whole. *Cutlip, 25 F.3d at 286* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). This examination, however, is limited "to the particular points that [the claimant] appears to raise in her brief on appeal." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Courts are not empowered to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Court finds substantial evidence to support the ALJ's judgment, it must affirm that decision even if the Court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

## B

### i

Mock challenges the ALJ's decision on four grounds. First, she argues that "[t]he ALJ failed to engage in the appropriate analysis of the medical opinion[ ] of treating Dr. George Mercado, MD at Comprehend." [R. 15-2 at 5.] Mock received grief counseling and treatment at Comprehend shortly after the death of her husband.[3] [Tr. 917.] The ALJ recognized Mercado's report when she stated that she had "reviewed [Mock's] grief counseling records from . . . June

---

[3] Mock briefly attempts to argue that the ALJ "appears to have engaged in inappropriate untrained medical assessment [by indicating that her] depression was 'bereavement[,]' suggesting it was temporary." [R. 15-2 at 6.] She cites no section of the ALJ's decision to support this claim. The Court's own review of the ALJ's decision shows that she did not indicate Mock's depression was only a product of "bereavement," but simply noted that she was "understandably upset by her husband's death, and can still be regarded [as] in the grieving stage." [Tr. 27.] Her grief counseling records indicate that, prior to her husband's illness and death, she last received "psychiatric care" for anxiety and depression in 2003. [Tr. 927.] She reports that her depression "recurred" when her husband was diagnosed with leukemia in 2012, and "escalated" after her husband passed away. [Tr. 926.] These records (not to mention common sense) support the ALJ's recognition that Mock's grief had impacted her emotional state.

2013" at "Exhibit "B19F," and noted that Mock's husband had "died April 1, 2013." [Tr. 26.] But Mock apparently believes that the ALJ should have given Dr. Mercado's "opinion" specific weight and discussed it at greater length. [R. 15-2 at 5.]

This claim presumes that Dr. Mercado's treatment record qualified as an "opinion." The Commissioner thinks it did not. [R. 19 at 6.] The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.9527(a)(2). According to the Commissioner, Dr. Mercado's report was not a "medical opinion" because he "did not provide any opinion regarding the nature and severity of Plaintiff's mental limitations or her functional limitations." [R. 19 at 6.]

Dr. Mercado's report detailed Mock's self-reported health issues, provided a "mental status assessment," made a summary diagnosis of "major depressive disorder" and "post-traumatic stress disorder," assigned her a Global Assessment of Functioning ("GAF") score of 55 (indicating only moderate impairments), and laid out a treatment plan. [Tr. 923-929.] This report drew some overarching conclusions about the "nature and severity" of Mock's impairments, but made no attempt to link these observations to Mock's vocational abilities or limitations. General, conclusory remarks by treating physicians are often not treated as medical opinions. *See, e.g., Mitchell v. Comm'r of Soc. Sec.,* 330 F. App'x 563, 570 (6th Cir. 2009) (finding physician's "brief statement concerning the potential psychological causes and manifestations of Mitchell's condition" did not qualify as a medical opinion); *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 474 (6th Cir. 2012) (holding physician's conclusory statement that, "[I]n [his] medical opinion, [the claimant] has severe low back pain and due to his pain is unable to work" was not a

7

true medical opinion); *Welch v. Colvin*, 566 F. App'x 691, 694 (10th Cir. 2014) (finding "no error in the ALJ's not weighing the physicians 'opinions'" because "each physician simply diagnosed [the claimant's] impairments and in some cases recommended treatment for them," but none "opined on [the] limitations resulting from her impairments.").

Here, Mercado provided a bit more than a single, conclusory statement about Mercado's impairments. The "mental status assessment," for example, rates her intellectual ability across five categories, and finds that her functioning is "average" or "adequate" in each category. [Tr. 924.] On the other hand, his "diagnosis" of major depression, post-traumatic stress, and a GAF of 55 amounts to less than one complete sentence, and he otherwise fails to "opine[ ] on [the] limitations resulting from her impairments." *Welch*, 566 F. App'x at 694. It is at least questionable, then, whether Mercado's report amounted to a true "medical opinion" within the meaning of the regulations.

But even assuming that Mercado's report qualified as a medical opinion, the ALJ's failure to afford it specific weight was plainly harmless error. When "an ALJ does not give good reasons for rejecting the opinion of a treating source, remand and reversal may not be required if the violation has only been *de minimis*." *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005). Courts will thus find the "omission [of a medical opinion in the record] from the ALJ's decision harmless [if] the ALJ nevertheless 'ma[de] findings consistent with the opinion.'" *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). Mock does not attempt to argue that the ALJ's decision was inconsistent with Dr. Mercado's report. Nor could she. Dr. Mercado's treatment records indicate that Mock is "cooperative, relates well, [is] accessible, [and makes] good eye contact," that her thought processes are "goal directed," that she has "average intellectual

8

functioning" and "no memory impairment," that her "social judgment" and "concentration" are "adequate," and that her overall functional impairments are only "moderate." [Tr. 923-29.] He also notes some traumatic events in her past, including a prior abusive relationship and the very recent death of her husband, and diagnoses her with "major depressive disorder, recurrent" and "posttraumatic stress disorder." [Tr. 926, 928.]

These observations are entirely consistent with the ALJ's findings. The ALJ determined that Mock suffers from "major depressive disorder/bereavement, anxiety disorder, . . . [and] posttraumatic stress disorder," and that all of these impairments are "severe." [Tr. 20.] She also found that Mock should be "limited to an object-focused work environment in which contact with coworkers and supervisors is casual and occasional, in a non-public work setting," that her "[h]er work should not require extended conversation, coordinated activities, dispute resolution, or similar activities," that she should be "limited to simple routine work tasks," that she can only "maintain attention and concentration for two-hour segments during an eight-hour workday," that she can only "adapt to gradual changes in a routine work environment," and that "[h]er work cannot require fast-paced production quotas or goals, production rate or pace work." [Tr. 20.] If anything, the ALJ's conclusions about Mock's limitations—including, for example, the fact that she could only have "occasional" interaction with others and "maintain attention and concentration for two-hour segments"—went a step further than Dr. Mercado's assessment, which found that she "relates well," has "adequate" social judgment and concentration, and has "no memory impairment." [Tr. 923-24.] Even if the ALJ had afforded Dr. Mercado's opinion great weight, then, this recognition would have, at best, resulted in an identical evaluation of her mental impairments and vocational limitations.

Mock's next objection is that the ALJ improperly considered the opinions of two non-examining state agency physicians. [R. 16-2 at 6.] She points out that these physicians provided their opinions before she received treatment at Comprehend in 2013, and thus they "did not have the benefit of" those treatments records—including Dr. Mercado's report—when assessing her condition. She then cites *Jones v. Astrue,* 808 F. Supp. 2d 993 (E.D. Ky. 2011), for the broad proposition that "the opinions of non-reviewing examiners who did not review the complete record [cannot] not be used to support the decision denying benefits." [R. 16-2 at 6.] The court in *Jones* did hold that, because two non-examiners had not had an "opportunity to see and comment upon" certain "records which were entered into evidence after their reviews," their "opinions [could not] be used to support the administrative decision." *Id.* at 998.

This aspect of *Jones*'s holding is no longer good law. Numerous cases in this Circuit have already reached that conclusion. *See, e.g., Helm v. Comm'r of Soc. Sec. Admin,* 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record."); *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 75 (6th Cir. 2012) (rejecting claimant's argument that non-examiner's "opinion was inadequate because it was based on a review of the record before she began treatment with [another doctor]," and holding that "the ALJ properly considered [the non-examiner's] report as opinion evidence."); *Keith v. Colvin*, 2016 WL 1212068, at *5 (M.D. Tenn. Mar. 29, 2016) ("Despite [the claimant's] reliance on *Jones v. Astrue* . . . for the proposition that the opinion of a non-examining expert who does not examine a complete record does not comprise substantial evidence, this court is bound only by the Sixth Circuit precedent set forth in *Helm* and *Fry*."); *Skaggs v. Colvin*, 2016 WL 782309, at *5 (E.D. Ky. Feb. 26, 2016) ("[W]hile the District Court in *Jones* seems to suggest that, when an ALJ affords more weigh to a non-examining physician over

10

an examining physician, only the most recent opinions are credible since they account for all preceding opinions, the Sixth Circuit has established that no such completeness rule or requirement exists."); *Price v. Colvin*, 2016 WL 782259, at *3 (E.D. Ky. Feb. 26, 2016) ("*Jones* relied on a Social Security Ruling that did not create a definitive rule, and, more importantly, the Sixth Circuit has made it clear that no such rule exists.").

In the absence of any such completeness rule, the ALJ's only obligation is to provide "good reasons" for giving greater weight to the non-examiners' opinions. *Helm,* 405 F. App'x at 1000. That brings us to Mock's third objection, which is that the ALJ should have assigned more weight to "the functional assessment of the consultative physician, Dr. Jones." [R. 15-2 at 5.] The ALJ found that Dr. Jones's report had "inconsistencies and vagaries." [TR. 28.] The Court agrees. The ALJ noted, for example, that Dr. Jones ambiguously measured Mock's "judgment, insight, and executive functioning" as "likely rang[ing] from functional to impaired," without clarifying whether he ultimately felt they were "functional" or "impaired." [Tr. 769-70.] He also vaguely characterized her cognitive functioning as "below average or non-impaired." [Tr. 772.] And although he gave her a "guarded" prognosis and suggested that she did not have the "coping mechanisms to adapt or respond to pressures normally found in occupational settings," he assigned her a GAF score of 55, which indicates only "moderate" limitations. [*Id.*] Just as importantly, the ALJ noted that Dr. Jones believed his findings "were likely indicative of symptom amplification and embellished memory dysfunction," coupled with "possible over-embellishment of hallucinatory experiences." [Tr. 773.] Given (1) the ambiguities and inconsistencies in Jones's report and (2) his conclusion that Mock had "likely" or "possibl[y]" engaged in "symptom amplification," the ALJ reasonably afforded greater weight to the opinions of the non-treating examiners. [*Id.*]

Mock's fourth argument is that the ALJ posed inaccurate questions to the vocational expert ("VE"). She first faults the ALJ for describing her as "an individual with a high school education." [Tr. 67.] The ALJ described her this way for a good reason: she repeatedly stated on the record that she has a high school education. At the hearing, for example, the ALJ asked her if she had a GED, to which she replied, "Yes." [Tr. 45.] And in her background application with the SSA, she answered "yes" when asked if she had "graduate[d] from high school." [Tr. 405.] Mock does not dispute that she has a high school education, but apparently argues that her true intellectual ability is too low to justify her receipt of a high school degree. [R. 15-2 at 8.] It is not the prerogative of the parties or this Court to question whether the state properly awarded Mock a GED. The ALJ's description of her as "an individual with a high school education" was accurate, and providing this information to the VE was reasonable.

Mock next claims that the ALJ should have incorporated a hypothetical indicating that she could "not adapt to or handle normal work stress in a daily environment." [R. 15-2 at 9.] This is simply a request to reweigh the evidence. Although Dr. Jones suggested that Mock could not "adapt or respond to pressures normally found in occupational settings," the Court has already determined that the ALJ reasonably afforded little weight to Dr. Jones's assessment. And Dr. Alex Guerro stated that Mock could "adapt to changes in non-complex work settings with no more than low to medium stress levels." [Tr. 140.] Dr. Jane Brake then affirmed Dr. Guerrero's opinion, found that Mock could handle a "low stress work environment," and concluded that Dr. Jones's opinion was "inconsistent with the overall [record]." [Tr. 154, 156.] These evaluations also squared with Dr. Mercado's observation that Mock is "cooperative, relates well, [is] accessible, [and makes] good eye contact," that her thought processes are "goal directed," that she has "average intellectual functioning" and "no memory impairment," that she has "adequate" social

judgment, awareness, and concentration, and that she has only a "moderate" difficulty in functioning.[4] [Tr. 923-29.]

Lastly, Mock argues that the ALJ should have credited a hypothetical including her "likely unpredicted absence from work due to migraine headaches." [R. 15-2 at 9.] But she cites no portion of the administrative record that actually supports her claims about the severity, frequency, and duration of these alleged headaches. The ALJ noted that any evidence of these alleged headaches was "based wholly on self-report and not objective findings." [Tr. 27.] She found that the records from Mock's "infrequent emergency room visits" for these headaches "made no mention of neurologic abnormalities, and brain imaging was normal." [Tr. 25.] This evidence was consistent with other indications of Mock's tendency to overstate her impairments, including one doctor's observation that "her exam does not match her complaints," another's comment that "she is neurologically intact with relatively benign radiographic findings," and Dr. Jones's conclusion that his findings "were likely indicative of symptom amplification." [*Id.*] On these facts, the ALJ did not err in failing to include Mock's self-reported headaches in the credited

---

[4] Mock relatedly references the purported judgment of "two examining consultative physicians" that she has "no psychological skills to adapt to or handle normal work stress." [R. 15-2 at 9.] She does not specify who these "two" physicians are, although presumably one was Dr. Jones. The second was probably Dr. Carney, who examined her in 2009. Dr. Carney did not state that she had "no" skills to adapt to work stress, but did say that she had "fair to poor ability to sustain attention and concentration" and "appears to have a poor ability to adapt" to work pressures. [Tr. 704.] Dr. Carney's report was not prepared for the purpose of this application, but for a previous application that the Commission already denied. [R. 15-2 at 3.] The ALJ held that those "previous decisions are final for any alleged disability through April 20, 2011," and Mock has not asked to reopen those cases. [Tr. 20.] The Court notes, too, that SSI benefits only apply from the date that the claimant first filed her application for SSI. Dr. Carney's assessment, which the Commission already rejected in its previous binding decision, did not occur in the time period relevant to this dispute. *See, e.g., Sutton v. Colvin,* 2013 WL 3716540, at *10 (N.D. Ohio July 12, 2013) (finding that ALJ need not "address [a physician's] report because it was prepared . . . well before the relevant time period in this case."); *Carson v. Colvin*, 2016 WL 1156746, at *10 (S.D.N.Y. Mar. 22, 2016) ("We do not fault the ALJ for not mentioning this material, however, because it relates to the period prior to . . . the date [the claimant] filed his application for benefits. SSI benefits are not payable prior to the month following the month in which the claimant's application was filed."). Mock has waived any argument that the ALJ should have given weight to Dr. Carney's outdated and previously rejected report.

hypotheticals. *Cf. Francis,* 414 F. App'x at 804 (6th Cir. 2011) (rejecting medical assessment that "merely regurgitate[d] [the claimant's] self-described symptoms.").

### III

As previously stated, this Court must limit its inquiry to the question of whether the ALJ's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 241). This is true even if the Court would decide the issue differently, and even if substantial evidence also supports the opposite conclusion. *Ulman,* 693 F.3d at 714; *Bass*, 499 F.3d at 509. In light of the evidence outlined above, the Court finds that substantial evidence supports the ALJ's finding. Accordingly, the Court **HEREBY ORDERS** as follows:

1. Mock's Motion for Extension of Time **[R. 16]** is **GRANTED**, and her tendered Motion for Summary Judgment [R. 16-2] is recognized for the purpose of this Order;

2. Mock's Motion for Summary Judgment [**R. 16-2**] is **DENIED**;

3. The Commissioner's Motion for Summary Judgment [**R. 19**] is **GRANTED**; and

4. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This 2nd day of September, 2016.

Gregory F. Van Tatenhove
United States District Judge